IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| IN THE MATTER OF: | ) | CASE NO. BK12-80348-TLS |
| | ) | A12-8079-TLS |
| HEARTHSTONE HOMES, INC., | ) | |
| | ) | |
| Debtor. | ) | CHAPTER 11 |
| HILLER ELECTRIC COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| C. RANDEL LEWIS, Chapter 11 Trustee; | ) | |
| WELLS FARGO BANK, N.A.; and | ) | |
| AA AMERICAN HEATING AND AIR | ) | |
| CONDITIONING, INC., | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

This matter is before the court on a motion for summary judgment filed by Defendant Wells Fargo Bank, N.A. (Fil. #12), and an objection filed by Plaintiff Hiller Electric Company (Fil. #20). David J. Skalka represents Wells Fargo Bank, N.A. ("Wells Fargo"), and John D. Stalnaker and Robert J. Becker represent Hiller Electric Company ("Hiller Electric"). This is a core proceeding as defined by 28 U.S.C. § 157(b)(2)(K).

Related to the motion for summary judgment are three additional motions. Hiller Electric's motion to allow the filing of a reply (Fil. #18); Hiller Electric's motion to compel discovery (Fil. #19); and Hiller Electric's motion to defer ruling on the summary judgment pending additional discovery (Fil. #25). Wells Fargo resisted all three motions. At a hearing on February 11, 2013, this court granted the motion to file a reply and took the other matters under advisement. For the reasons discussed below, the motion for summary judgment is granted and the motions to compel discovery and defer ruling are denied.

Hiller Electric filed this adversary proceeding to determine lien priority with respect to certain real estate sale proceeds. One of the Defendants, Wells Fargo, has filed a motion for summary judgment asserting that its deed of trust liens are the first and prior liens against the proceeds and that it is entitled to all of the remaining proceeds since its remaining loan balance far exceeds the remaining proceeds.

Summary judgment is appropriate only if the record, when viewed in the light most favorable to the non-moving party, shows there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c) (made applicable to adversary proceedings in bankruptcy by Fed. R. Bankr. P. 7056); *see, e.g.*, *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986). The court must examine the record to ascertain whether the movant, through depositions, answers to interrogatories, admissions, affidavits, and other evidence, has demonstrated the absence of a genuine issue of material fact. *Beard v. Banks*, 548 U.S. 521, 529 (2006). If the movant has done so, then the non-moving party, bearing the burden of persuasion, must by affidavit or otherwise, set forth specific facts showing that there is a genuine issue for trial. *Id.* The court does not weigh the evidence, make credibility determinations, or attempt to discern the truth of any factual issue. *Great Plains Real Estate Dev., L.L.C. v. Union Cent. Life Ins. Co.*, 536 F.3d 939, 943-44 (8th Cir. 2008). An issue is genuine if it has a real basis in the record, and a genuine issue of fact is material if it might affect the outcome of the suit. *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Blocker v. Patch (In re Patch)*, 526 F.3d 1176, 1180 (8th Cir. 2008) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

*Background*

The following facts are uncontroverted as taken from the parties' submissions:

1.    Hearthstone Homes, Inc. ("Hearthstone") filed its petition for relief under Chapter 11 of the United States Bankruptcy Code on February 24, 2012.

2.    On the date of bankruptcy filing, Hearthstone was indebted to Wells Fargo pursuant to the terms of a December 10, 2010, promissory note in the amount of $17,500,000.00. The note was secured by a perfected security interest in, among other things, various real estate lots and the improvements thereon. Wells Fargo's security interest included deeds of trust dated on or about April 16, 2005, which were recorded on April 29, 2005, with the Register of Deeds of Douglas County, Nebraska, as Instrument No. 2005-048649 and, on April 29, 2005, with the Register of Deeds of Sarpy County, Nebraska, as Instrument No. 2005-13794. As of the date of bankruptcy filing, the principal balance remaining due to Wells Fargo exceeded $17,000,000.00.

3.    Additional modifications to the deeds of trust covering additional real estate collateral were recorded from time to time. In particular, the modifications to the deeds of trust relating to the 15 real estate lots identified in Hiller Electric's complaint in this proceeding were recorded with the appropriate Register of Deeds offices between August 8, 2005, and December 22, 2011.

4.    On January 6, 2012, Hearthstone recorded a notice of commencement pursuant to the Nebraska Construction Lien Act against each of the 15 lots identified in Hiller Electric's complaint.

5. The 15 lots ("Lots") on which Hiller Electric claims a construction lien are as follows:

| | | |
|---|---|---|
| 1704 North 207th | - | Lot 52 Bellewood (Douglas) |
| 1708 North 207th | - | Lot 53 Bellewood (Douglas) |
| 15503 Knutsen Circle | - | Lot 1, Meadow Ridge Rep 1* (Douglas) |
| 9139 Scott Street | - | Lot 514 Glenmoor (Douglas |
| 8121 North 147th Street | - | Lot 325 Shadowbrook (Douglas) |
| 8919 North 159th Street | - | Lot 127 Shadowbrook West |
| 8925 North 159th Avenue | - | Lot 126 Shadowbrook West (Douglas) |
| 20809 Veterans Drive | - | Lot 15 Summer Glen (Douglas) |
| 7965 North 147th Street | - | Lot 209 Ridgemoor (Douglas) |
| 8003 North 147th Street | - | Lot 210 Ridgemoor (Douglas) |
| 7363 North 89th Avenue | - | Lot 60 Turnbridge (Douglas) |
| 8409 South 164th Street | - | Lot 2 Stonecrest Replat Two (Sarpy) |
| 16283 Loop Street | - | Lot 217 Meridian Park (Sarpy) |
| 6475 Elmhurst | - | Lot 93 Stockmans Hollow (Sarpy) |
| 11104 Sherman Street | - | Lot 83 Kingsbury Hills (Sarpy) |

6. On January 27, 2012, Hiller Electric recorded notices of construction liens against the Lots in the total amount of $45,772.40 for work it claimed to have performed on improvements on the Lots on or before December 21, 2012. For purposes of the pending motion, Wells Fargo concedes that Hiller Electric's construction lien notices are proper and that the notices were filed within 120 days of the last substantive work performed as required by statute.

7. Since the date of bankruptcy filing, Wells Fargo has received less than $6,000,000.00 from the sale of its collateral. Any remaining collateral is insufficient to pay the indebtedness to Wells Fargo in full.

8. On May 21, 2012, this court approved the Chapter 11 trustee's motion to sell certain assets free and clear of liens, which included the Lots. The motion and order provided that all liens on the real estate sold attached to the proceeds of the sale with the same validity and priority as existed prior to the sale. The sale was completed, the Chapter 11 trustee received the sale proceeds, and on September 28, 2012, the trustee filed a proposed motion for distribution of those sale proceeds. The trustee allocated $933,691.00 of the sale proceeds to the Lots, after sale expenses and approved surcharges.

9. As to the Lots, the Chapter 11 trustee suggested that Hiller Electric's liens were entirely junior to those of Wells Fargo and proposed to make no distribution to Hiller Electric. Hiller Electric objected to the trustee's proposed distribution and, based upon its objection, this court entered an order approving the trustee's motion subject to and requiring the trustee to retain the total amount due to Hiller Electric pursuant to its claimed liens, plus an additional 15%, for a total of $52,638.26 pending action by Hiller Electric. Subsequently, pursuant to the terms of the distribution order, Hiller Electric filed this adversary proceeding to determine its rights in the sale proceeds.

10. Wells Fargo timely filed its answer (Fil. #9) to Hiller Electric's complaint asserting its priority over the construction liens claimed by Hiller Electric. Without previously seeking court authority, Hiller Electric filed its reply (Fil. #11), asserting that the liens of Wells Fargo on certain lots are void under 11 U.S.C. §§ 544 and 547 and the Nebraska Fraudulent Transfer Act; that Wells Fargo should only be entitled to a pre-determined "lot release price"; that Wells Fargo was aware that Hearthstone was encouraging subcontractors to delay filing construction liens; that Wells Fargo by its actions waived any claim to priority over the construction liens; and that Wells Fargo would be unjustly enriched if its liens are determined to have priority.

*Discussion*

Hiller Electric claims a lien pursuant to the Nebraska Construction Lien Act, Neb. Rev. Stat. § 52-125, *et seq.*, and Wells Fargo concedes that Hiller Electric's lien was properly filed pursuant to that Act. There does not appear to be any dispute as to the applicability of the Act, including that Hiller Electric is "claimant," Hearthstone is a "contracting owner," and that Wells Fargo is the holder of a "construction security interest" under the Act.

A claimant such as Hiller Electric who furnishes services or materials pursuant to a real estate improvement contract "has a construction lien, only to the extent provided in the Nebraska Construction Lien Act, to secure the payment of his or her contract price." Neb. Rev. Stat. § 52-131(1). Further, "[t]he priority of a claimant's lien as against . . . claimants other than construction-lien claimants is specified in section 52-139." Neb. Rev. Stat. § 52-131(5).

Under the Act, "a construction lien has priority over adverse claims against the real estate as if the construction-lien claimant were a purchaser for value without knowledge who had recorded at the time his or her lien attached." Neb. Rev. Stat. § 52-139(1).[1] If a notice of commencement under the Nebraska Construction Lien Act is effective at the time a construction lien is recorded, "the lien attaches as of the time the notice is recorded, even though visible commencement occurred before the notice is recorded." Neb. Rev. Stat. § 52-137(2).

It is undisputed that a notice of commencement was filed as to each of the Lots on January 6, 2012, and that Hiller Electric's construction lien was not recorded until January 27, 2012. Thus, Hiller Electric's construction lien is deemed to have attached on January 6, 2012. It is also undisputed that Hearthstone's deeds of trust, and its amendments to its deeds of trust incorporating the Lots, were all recorded prior to January 6, 2012. Therefore, under the Nebraska Construction Lien Act, Hiller Electric's construction liens are junior to Wells Fargo's previously recorded deed of trust liens.

Hiller Electric even seems to acknowledge the foregoing result under the strict terms of the Nebraska Construction Lien Act. However, in its reply, Hiller Electric has raised various defenses that it believes should alter that priority. While it identified several defenses in its reply, Hiller Electric

---

[1] Section 52-139 contains certain exceptions to this rule, but none of the exceptions have been raised in the pleadings, the motion, or the response to the motion.

-4-

addressed only three in its response to the motion for summary judgment: (i) that the filing of the notices of commencement by Hearthstone was in violation of the Nebraska Uniform Fraudulent Transfer Act and that Wells Fargo may have been complicit; (ii) that by virtue of its prior conduct, Wells Fargo has waived or is estopped from asserting priority due to the filing of the notices of commencement; and (iii) that Wells Fargo had close access to Hearthstone's financial activities and, by virtue thereof, was an insider and should be estopped from taking advantage of the filing of the notices of commencement and/or would be unjustly enriched.[2]

Hiller Electric asserts that the filing of the notices of commencement can be avoided under the terms of the Nebraska Uniform Fraudulent Transfer Act, including sections 36-705 and 36-706. I disagree. The Nebraska Fraudulent Transfer Act requires a "transfer" by an obligor or debtor. For purposes of the Act, "[t]ransfer means every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset or an interest in an asset, and includes payment of money, release, lease, and creation of a lien or other encumbrance." Neb. Rev. Stat. § 36-702(12). Hiller Electric is correct that "transfer" is broadly defined (*see Kaler v. Craig (In re Craig)*, 144 F.3d 587, 591 (8th Cir. 1998)), but even under a broad definition, the filing of the notices of commencement is not a "transfer." Instead, it is a statutorily authorized notice regarding the commencement of improvements on the real estate. The notice of commencement did not "transfer" anything – it simply gave notice of the commencement of improvements.

Hiller Electric asserts that Hearthstone's filing of the notices of commencement "gave Wells Fargo a secured priority interest in the 15 real estate lots, which Wells Fargo did not have prior to the filing of the Notices of Commencement." That is incorrect. The attachment of Wells Fargo's security interest was always the same – the date that it recorded its deeds of trust, or at least the amendments to the deeds of trust that included the Lots. That was Wells Fargo's priority date, both before and after the filing of the notices of commencement.

Hiller Electric further argues that by filing the notices of commencement Hearthstone altered Hiller Electric's lien interest and that of Wells Fargo since it caused Hiller Electric's lien to attach as of the date of filing of the notice of commencement. That argument is not compelling for several reasons.

First, Hiller Electric's assertions are completely unsubstantiated. If a construction lien is recorded while there is no recorded notice of commencement covering the improvement, the lien attaches at the earlier of visible commencement or the recording of the lien. Neb. Rev. Stat. § 52-137(3). There is nothing in the record to indicate when visible commencement occurred on any of the Lots and, therefore, nothing in the record to indicate that Hiller Electric's lien could have attached prior to the filing of the notice of commencement.

---

[2] A party's failure to raise or discuss an issue in its brief is to be deemed an abandonment of that issue. *Yates v. Forker (In re Patriot Co.)*, 311 B.R. 71, 74 (B.A.P. 8th Cir. 2004). *See also In re Armstrong*, 201 B.R. 526, 532 (Bankr. D. Neb. 1996) (stating that waiver may be found where a party fails to raise an issue despite a full and fair opportunity to do so).

Second, Hiller Electric could have, but apparently chose not to, file a construction lien at an earlier date, including a date prior to the filing of the notice of commencement. It was Hiller Electric's own delay that resulted in an alteration of the attachment date for Hiller Electric's lien – not any identified action of Wells Fargo.

Third, Hiller Electric's assertion that Wells Fargo "may" have been aware of Hearthstone's purported efforts to "defraud" Hiller Electric into delaying the filing of its construction liens is nothing but pure speculation. Hiller Electric filed this case and, therefore, should have been armed with evidence to support its prima facie case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 34 (1986) (where the nonmoving party "will bear the burden of proof at trial on a dispositive issue," the nonmoving party bears the burden of production under Rule 56 to "designate specific facts showing that there is a genuine issue for trial"). It has no such evidence and wishes to have this court authorize it to comb through expansive records of Wells Fargo in an effort to support its theory. I will not do so. Hiller Electric filed this adversary proceeding as a priority dispute with Wells Fargo. It has access to all of Wells Fargo's loan documentation and other records Wells Fargo has produced that are relevant to the priority dispute. I will not authorize a fishing expedition through extensive discovery for the sole purpose of trying to find something that "might" support a theory without at least some substantive basis for doing so. "A court can reject a request for discovery . . . if it deems the request to be based on speculation as to what potentially could be discovered." *Paddington Partners v. Bouchard*, 34 F.3d 1132, 1138 (2d Cir. 1994); *Zuk v. E. Penn. Psychiatric Inst.*, 103 F.3d 294, 299 (3d Cir. 1996) ("[D]iscovery is not intended as a fishing expedition permitting the speculative pleading of a case first and then pursuing discovery to support it; the plaintiff must have some basis in fact for the action."). Therefore, the motion to compel discovery and the motion to delay ruling on the summary judgment are denied.

Hiller Electric is essentially speculating that Wells Fargo was complicit in a fraud committed by Hearthstone; the fraud being related to convincing Hiller Electric to not file or to delay filing its construction liens. That is a fraud claim, not a defense to an action to establish priorities under the Construction Lien Act. If Hiller Electric wishes to pursue a fraud claim for damages against Hearthstone and/or Wells Fargo, so be it. This action, to determine the priorities with respect to real estate, is not the place to do it. Allegations of fraud must be pleaded with particularity. Fed. R. Bankr. P. 7009; Fed. R. Civ. P. 9(b). "In other words, Rule 9(b) requires plaintiffs to plead 'the who, what, when, where, and how: the first paragraph of any newspaper story.'" *Summerhill v. Terminix, Inc.*, 637 F.3d 877, 880 (8th Cir. 2011) (quoting *Great Plains Trust Co. v. Union Pac. R.R. Co.*, 492 F.3d 986, 995 (8th Cir. 2007)).

Hiller Electric next argues that if it were allowed to complete discovery, it "might" be able to establish certain prior conduct of Wells Fargo. Specifically, it believes that discovery would reveal that Wells Fargo "had a release price per real estate lot, the payment of which would then require Wells Fargo to release its lien on said real estate lot." As evidence that such release prices may exist, Hiller Electric points to a forbearance agreement dated February 9, 2012, between Wells Fargo and Hearthstone, which makes reference to a potential sale of the property and release prices for certain real estate. However, Hiller Electric fails to recognize that the document itself is a forbearance agreement to deal with Hearthstone's default. It further provides that if Hearthstone defaults under

the agreement, Wells Fargo may immediately enforce each and every right and remedy it has under its promissory note, deeds of trust, and other documents. I have no doubt that Wells Fargo and Hearthstone did have a procedure to release lots while the loan was performing. However, it is undisputed that Hearthstone did default. Hiller Electric has presented no evidence to support the proposition that, even after default, Wells Fargo would be required to accept anything less than payment in full to release any parcel of property. In fact, the loan documents in the record are quite to the contrary.

Hiller Electric also attempts to rely upon Wells Fargo's stipulation early in the bankruptcy case to allow escrowed funds from a certain property sale that took place immediately after bankruptcy filing to be paid first to all recorded construction liens. However, it was quite clear at that time that Wells Fargo did so only with respect to the property described in the stipulation and did not engage in a general waiver of priority with respect to all properties. That was, obviously, a post-petition agreement and was well after the notice of commencement was filed by Hearthstone and the construction lien notices were filed by Hiller Electric. Therefore, it is not possible for Hiller Electric to have detrimentally relied upon that stipulation or to have been damaged thereby. *Farmington Woods Homeowners' Ass'n, Inc. v. Wolf*, 817 N.W.2d 758, 766 (Neb. 2012) (stating the elements of equitable estoppel: lack of knowledge of the facts, good faith reliance, and change in position causing injury or prejudice). Hiller Electric fails to identify any law to support its position.

Finally, Hiller Electric argues that Wells Fargo should be "Estopped to Assert any rights under the Notices of Commencement" because it knew on a daily basis that Hearthstone was incurring additional costs to improve the real estate. Again, Hiller Electric fails to assert any actual facts or any law to support its position. In fact, the Construction Lien Act provides protection to claimants in such a situation, but Hiller Electric failed to allege any priority due to any loan advances being made after knowledge that a construction lien has attached. *See* § 52-137(3). In any event, Hiller Electric failed to protect itself by filing a lien at an earlier date and is entitled to a lien "only" to the extent provided in the Construction Lien Act. Neb. Rev. Stat. § 52-131(1). The only lien to which it is entitled under the Act is clearly junior to the lien of Wells Fargo.

Therefore, summary judgment should be entered in favor of Wells Fargo, and Hiller Electric's complaint should be dismissed.

IT IS ORDERED: Hiller Electric's motion to compel (Fil. #19) and motion to defer (Fil. #25) are denied. Wells Fargo Bank, N.A.'s motion for summary judgment (Fil. #12) is granted. Separate judgment will be entered.

DATE: February 13, 2013.

BY THE COURT:

/s/ Thomas L. Saladino
Chief Judge

Notice given by the Court to:
    *David J. Skalka
    John D. Stalnaker/Robert J. Becker
    United States Trustee

Movant (*) is responsible for giving notice to other parties if required by rule or statute.